KNAPP, APPELLANT, *v.* KNAPP, APPELLEE.

[Cite as Knapp *v.* Knapp (1986), 24 Ohio St. 3d 141.]

(No. 85-1605—Decided June 25, 1986.)

*Gary Dumm* and *Stephen E. Carter,* for appellant.
*John R. Adkins,* for appellee.

DOUGLAS, J.  In *McClain* v. *McClain* (1984), 15 Ohio St. 3d 289, we held in the syllabus:

"A court of common pleas does not have jurisdiction to modify a provision for periodic sustenance alimony payments contained within a dissolution of marriage decree."

*McClain* was decided on the basis of R.C. 3105.65(B). Today, we are called upon to decide whether the holding in *McClain* can be circumvented by a motion filed pursuant to Civ. R. 60(B)(4). Specifically, we must decide whether the trial court had authority, pursuant to Civ. R. 60(B)(4), to modify the alimony provision in the dissolution decree.

## I

Before turning to our Civ. R. 60(B)(4) analysis, it is appropriate to emphasize the rationale behind our decision in *McClain*. In Ohio, dissolution is a form of no-fault divorce where the court can terminate a marriage pursuant to a mutual request of the parties. In fact, a simple reading of the Revised Code reveals that mutual consent is the cornerstone of our dissolution law.

An action for a dissolution of marriage, for instance, must be initiated by the joint petition of the parties. R.C. 3105.63. The petition must be accompanied by a separation agreement agreed to by both parties. R.C. 3105.63. After the petition and accompanying separation agreement have been filed, the case proceeds to a final hearing. Again, mutual consent is the key.

"* * * If * * * either spouse at the [final] hearing is not satisfied with the terms of the separation agreement or has had a change of heart about dissolving the marriage * * * the Court must dismiss the petition * * *." Norris, Divorce Reform, Ohio Style (1974), 47 Ohio Bar 1031, 1034.

Since dissolutions are restricted to cases where both parties agree to its terms, the courts have no authority to modify those terms, except as authorized by R.C. 3105.65. That statute, as originally enacted, stated in part:

"(B) * * * The court has full power to enforce its decree, and *retains jurisdiction to modify* all matters of custody, child support, visitation, and *periodic alimony payments*." (Emphasis added.) 135 Ohio Laws, Part II, 603, 616.

In 1975, the General Assembly amended the provision and restricted its scope. Specifically, the legislature deleted the words "and periodic alimony payments." Clearly, then, the General Assembly amended the statute in order to deprive the courts of jurisdiction to modify periodic alimony provisions contained in dissolution decrees. This legislative determination cannot be ignored in the case at bar.

## II

The resolution of the specific issue before us requires consideration of two competing principles. One is the principle of finality; the other is the principle of perfection.

Finality requires that there be some end to every lawsuit, thus produc-

ing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values. See Kane, Relief from Federal Judgments: A Morass Unrelieved by a Rule (1978), 30 Hastings L.J. 41.

Civ. R. 60(B) strikes a balance between these competing principles by vesting the courts with broad, but not unlimited authority to set aside judgments. Civ. R. 60(B)(4) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (4) * * * it is no longer equitable that the judgment should have prospective application * * *."

Donald Knapp asserts he is entitled to Civ. R. 60(B)(4) relief for two reasons. One, because his financial condition has diminished and he cannot afford to make the agreed-upon alimony payments. Two, because he never understood the meaning of the settlement agreement. Therefore, he concludes, it is no longer equitable to give the alimony provision of his settlement agreement prospective enforcement.

We disagree. It would be inequitable *not* to give the alimony provision prospective enforcement. It is abundantly clear from the record that Donald Knapp made a voluntary, deliberate choice to enter into the settlement agreement. It is equally clear that he made a voluntary, deliberate choice to petition the court and request that the agreement be incorporated into a dissolution decree. Joyce Knapp made these same voluntary, deliberate choices and it would be unfair to relieve either party from the consequences of these choices simply because hindsight indicates they may not have been wise choices. As the United States Supreme Court has stated, "* * * [t]here must be an end to litigation some day, and free, calculated, deliberate choices are not to be relieved from." *Ackermann* v. *United States* (1950), 340 U.S. 193, 198. In addition, any modification of the Knapps' separation agreement, other than one permitted by the Revised Code, would be inequitable because it would require the court to set aside the dissolution, and restore the marriage. *Ashley* v. *Ashley* (1981), 1 Ohio App. 3d 80, 83. Donald Knapp's motion for Civ. R. 60(B)(4) relief must be denied.

## III

A decision, contrary to the one we make today, would open a veritable Pandora's box of problems. For instance, litigants, armed with the knowledge that Civ. R. 60(B)(4) would relieve them of the consequences of their voluntary, deliberate choices, would be encouraged to litigate carelessly. Judgment winners would be unable to rely on their victories. Those financially able to do so could crush their less affluent adversaries under a pile of Civ. R. 60(B)(4) motions. All of this would be a subversion

of judicial economy and an opening of the proverbial floodgates, causing Ohio's courts to drown in a sea of duplicative, never-ending litigation.

### IV

Civ. R. 60(B)(4) was not designed to permit the type of relief Donald Knapp now seeks. It was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control. The Staff Notes to Civ. R. 60(B)(4) provide an example:

"* * * The * * * provision would most likely operate to afford relief from the operation of a prospectively operating judgment such as an injunction. Thus an injunction may restrain a person and his heirs and assigns from violating a neighborhood restrictive covenant. After a time lapse and after a radical change in the character of the neighborhood, a person bound by the judgment might seek to have the operation of the judgment set aside as to him."

In the case at bar, Donald Knapp had an opportunity to control the terms of his agreement and his dissolution decree. Civ. R. 60(B)(4) was not designed to give relief under these circumstances.

### V

In summary, we find that Ohio's public policy, as established by the General Assembly, is to deprive the courts of jurisdiction to modify periodic alimony payments in dissolution decrees. In light of this public policy, and in light of the fact that Donald Knapp made a voluntary, deliberate choice to enter into the settlement agreement, Civ. R. 60(B)(4) relief is not available to him.

Donald Knapp was given a full, fair opportunity to litigate this case in 1978. He has had his day in court. He is not entitled to another and another.

For all of the foregoing reasons, we hold:

1. The "* * * it is no longer equitable * * *" clause of Civ. R. 60(B)(4) was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control.

2. The "* * * it is no longer equitable * * *" clause of Civ. R. 60(B)(4) will not relieve a litigant from the consequences of his voluntary, deliberate choice to enter into a separation agreement.

The judgment of the court of appeals is reversed, and the cause is remanded to the trial court for reinstatement of its judgment subject to our instructions herein.

*Judgment reversed and cause remanded.*

HOLMES and WRIGHT, JJ., concur.

LOCHER, J., concurs in the syllabus and judgment only.

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., dissent.

CELEBREZZE, C.J., dissenting. The precise question presented is this: Where a court has entered a dissolution decree providing for periodic alimony payments contained in a separation agreement, may the court subsequently consider a Civ. R. 60(B)(4) motion for relief from judgment even though it has not expressly reserved jurisdiction to modify the decree?

Because I believe our domestic relations courts do possess inherent and Civil Rule authority to vacate judgments when it is no longer equitable to apply them prospectively, and because I find that the majority's opinion is both erroneous and improperly based on unresolved factual circumstances, I dissent.

In *McClain* v. *McClain* (1984), 15 Ohio St. 3d 289, this court held in the syllabus that "[a] court of common pleas does not have jurisdiction to modify a provision for periodic sustenance alimony payments contained within a dissolution of marriage decree. * * *" (Followed in *Werk* v. *Werk* [1985], 17 Ohio St. 3d 143.) In *McClain,* we specifically noted the consensual nature of separation agreements incorporated into decrees of dissolution and correctly observed that the General Assembly, by amending R.C. 3105.65(B) in 1975, intended that the decreeing court would not retain jurisdiction to modify alimony awards.

The appellate court in the instant case fully recognized the limitations of R.C. 3105.65(B) as enunciated by this court in *McClain, supra.* Insofar as the trial court's action was consistent with this authority, the appellate court correctly affirmed the lower court's determination that it lacked jurisdiction to *modify* the alimony award.

The "twist" in this case that was not considered in *McClain* is whether such a dissolution decree may nevertheless be vacated by the trial court under Civ. R. 60(B). I again agree with the appellate court's conclusion that trial courts do possess such inherent power. A number of decisions have similarly and consistently recognized the courts' authority to rule on Civ. R. 60(B) motions and to vacate dissolution and divorce decrees.

For example, in *McKinnon* v. *McKinnon* (1983), 9 Ohio App. 3d 220, 221, the appellate court concluded that "Civ. R. 60(B) is a procedure for granting relief from a judgment not otherwise modifiable. A change of circumstances standing alone cannot justify relief from judgment, although Civ. R. 60(B)(4) has a similar provision permitting relief from judgment if it is no longer equitable that the judgment have prospective application. Nevertheless, there is nothing in the Civil Rules, or otherwise, precluding the application of Civ. R. 60(B) to domestic relations matters." Cf. *Coulson* v. *Coulson* (1983), 5 Ohio St. 3d 12 (relief under Civ. R. 60[B][5] for fraud in the separation agreement); *Scholler* v. *Scholler* (1984), 10 Ohio St. 3d 98 (Civ. R. 60[B] proceeding to vacate a dissolution of marriage decree because of, *inter alia,* fraud in the original allocation of property

which is also not modifiable under R.C. 3105.65[B], estops subsequent relitigation of the same claims and issues); *In re Dissolution of Marriage of Watson* (1983), 13 Ohio App. 3d 344 (court has inherent power to grant relief under Civ. R. 60[B][5] for extraordinarily unjust child custody agreement); *Anderson* v. *Anderson* (1984), 13 Ohio App. 3d 194, 197 (although court may not modify alimony award in dissolution decree under R.C. 3105.65[B], it may vacate the decree under Civ. R. 60[B] in an appropriate case); *DiPietro* v. *DiPietro* (1983), 10 Ohio App. 3d 44 (although alimony is not modifiable, Civ. R. 60[B] may be used to vacate dissolution decree where mental incompetency, fraud, duress or undue influence led to the agreement). See, also, *Tatom* v. *Tatom* (1984), 19 Ohio App. 3d 198; *In re Murphy* (1983), 10 Ohio App. 3d 134; *Sexton* v. *Sexton* (1978), 60 Ohio App. 2d 339 [14 O.O.3d 297].

The requirements for granting a Civ. R. 60(B) motion are set forth in the second paragraph of the syllabus in *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146 [1 O.O.3d 86]: "To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

This authority to vacate judgments is not at odds with the General Assembly's intent when it set statutory limits concerning modification of alimony awards contained in dissolution decrees. Civ. R. 60 and R.C. 3105.65(B) are not incompatible but rather are complimentary provisions. They both address important but different problems. The statute limits a trial court's authority to modify an award whereas the Civil Rule "reflects the trial court's inherent power to relieve a party from the unjust operation of a judgment." *In re Watson, supra,* at 346. The instant court of appeals correctly observed that, in order to invoke Civ. R. 60(B)(4) relief, "[t]he movant has a much heavier burden. It is not enough to show a mere change of circumstances, but rather the inequity of continued enforcement. The movant must pique the conscience of the court, convince it that equity requires the court's intervention."

The *DePietro* court, *supra,* similarly observed that the movant cannot merely demonstrate that he made a bad deal, acted in haste or was depressed. Rather, the trial court must be convinced that continued enforcement of the "separation agreement is * * * unconscionable and against public policy." *Id.* at 49.

In this case, it may be doubtful that appellee would have been able to carry his heavy burden of demonstrating that "* * * it is no longer equitable that the judgment should have prospective application." Civ. R. 60(B)(4). However, such determination involves an assessment of facts

and should have been made on remand by the trial court. See *Richards* v. *St. Thomas Hospital* (1986), 24 Ohio St. 3d 27 (Celebrezze, C.J., concurring in part and dissenting in part at 30-33). The narrow issue before us today is whether Ohio's courts may even consider such motions.

Just as a trial court may obviously correct inadvertent errors or omissions in a dissolution decree under Civ. R. 60(A) despite the statutory prohibition against "modification" (it is beyond belief that a court would fail to vacate or correct an alimony award mistakenly set at $1,000 a month which was supposed to be $100), the same court logically has jurisdiction to relieve an alimony award under Civ. R. 60(B) if any of the enumerated reasons in the rule are demonstrated to be consistent with *GTE, supra.*

Accordingly, I would have upheld the judgment below by reaffirming Ohio's trial courts' inherent common-law equitable power and Civil Rule authority to vacate their own judgments which are void *ab initio* or voidable. Cf. *Jelm* v. *Jelm* (1951), 155 Ohio St. 226, 241 [44 O.O. 246]; *Van DeRyt* v. *Van DeRyt* (1966), 6 Ohio St. 2d 31, 36 [35 O.O.2d 42]; *In re Petition for Mallory* (1985), 17 Ohio St. 3d 34, 36.

SWEENEY and C. BROWN, JJ., concur in the foregoing dissenting opinion.